# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4157 | **DATE** | 4/14/2004 |
| **CASE TITLE** | Julie A. Rhodes v. Jo Anne Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5)

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion for summary judgment (6-1) is granted. Defendant's motion for summary judgment is (9-1) is denied. The decision of the Commissioner is reversed. This action is remanded to the Commissioner. Enter memorandum opinion and order.

(11) X [For further detail see order (attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | 4-20-04 date docketed | |
| ✓ | Docketing to mail notices. | | | 11 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | 6-1. docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SLB | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

APR 2 0 2004

JULIE A. RHODES,                        )
                                        )
            Plaintiff,                  )
                                        )    03 C 4157
       v.                               )
                                        )    Judge George W. Lindberg
JO ANNE BARNHART, COMMISSIONER          )
OF SOCIAL SECURITY,                     )
                                        )
            Defendant.                  )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Julie A. Rhodes seeks judicial review of a final decision of defendant Commissioner of Social Security that denied her claim for Social Security disability benefits. Before the court are the parties' cross-motions for summary judgment. For the reasons stated below, plaintiff's motion is granted, and defendant's motion is denied.

**I.  Procedural History**

On April 3, 2001, plaintiff filed an application for Social Security disability benefits. The claim was denied both initially and on reconsideration. Plaintiff received a hearing before an Administrative Law Judge ("ALJ") on December 19, 2002. On January 31, 2003, the ALJ denied plaintiff's request for benefits. Plaintiff requested review by the Appeals Council, which was denied on April 24, 2003, leaving the ALJ's decision as the final decision of the Commissioner. On June 18, 2003, plaintiff filed this action.

**II.  Factual Background**

Plaintiff was born on January 21, 1955, and was 47 years old at the time of the ALJ's decision. She attended high school through her sophomore year. Prior to October 1999, plaintiff



worked ten to fifteen hours per week, approximately forty weeks per year, "merchandising," or moving products around in retail stores. In this job, plaintiff was required to lift as much as thirty to fifty pounds, depending on the type of merchandise she was moving. Frequently, the merchandise she was required to lift would weigh less than ten pounds. Plaintiff earned between $4,000 and $4,600 annually for performing this work.

Prior to the merchandising job, plaintiff worked at a hardware and lumber store. In that job, plaintiff drove a forklift, and unloaded and loaded trucks. Plaintiff was required to lift 75 pounds at the hardware and lumber store. Plaintiff has also worked as an order picker, in which she was required to lift 25 to 50 pounds. Finally, plaintiff previously worked as an inventory clerk, which required only light exertion and minimal lifting.

Plaintiff claims that she became disabled on October 20, 1999,[1] when a neighbor's dog knocked her down. As a result of this incident, plaintiff fractured her right lateral tibial plateau (knee). Plaintiff had surgery to repair the fracture on October 26, 1999. Plaintiff was on crutches after her surgery, and was allowed to bear weight on the leg with a brace starting January 3, 2000. Plaintiff testified that she had physical therapy two to three times a week, until April or May 2000. Plaintiff could walk with a cane as of January 31, 2000, but was experiencing some secondary strain and pain in her ankle. As of April 12, 2000, plaintiff had some occasional discomfort in her knee, but had full range of motion and was walking with a minimal limp. As of July 24, 2000, plaintiff was still experiencing occasional minimal discomfort in her knee, but was walking with no limp; her physician concluded that the fracture had healed, and discharged

---

[1] Plaintiff originally alleged that she became disabled on January 16, 2001. The ALJ granted plaintiff's motion to amend the alleged disability onset date to October 20, 1999.

her.

Plaintiff testified that approximately one to two months after her knee surgery, she began to have problems with her shoulders. Plaintiff testified that her shoulders hurt constantly, and that the pain increased over time. At the time, plaintiff assumed that the shoulder problem was caused by using crutches.

Plaintiff attempted to return to part-time work in June or July 2000. She testified that at that time, her leg and shoulders still bothered her. Plaintiff believed that screws that had been placed in her leg during her knee surgery were rubbing when she moved. Plaintiff's employer accommodated her by having coworkers help her lift objects, and by allowing her to go home early some days.

On October 11, 2000, plaintiff sought medical treatment for her shoulder pain. Plaintiff told her physician that her shoulder pain began when she started using crutches for her leg injury. Plaintiff initially was treated with injections of Lidocaine and DepoMedrol, which provided relief for only two to three weeks. Plaintiff testified that her physician also sent her to physical therapy for four or six weeks, which was not effective. Plaintiff stopped working in October or November 2000, around the time of the usual seasonal layoff in her job. At that time, she was unable to do much of her work due to shoulder pain.

On December 11, 2000, plaintiff saw her physician with complaints of occasional discomfort in her knee. Plaintiff's treating physician theorized that this discomfort could be caused by the screws and other hardware that had been placed in her leg during surgery in October 1999.

Plaintiff had surgery on her left shoulder on January 25, 2001, to repair a partial thickness

3

tear of the rotator cuff with impingement. Plaintiff testified that she had physical therapy two to three times per week for a couple of months after that surgery. Plaintiff testified that she was unable to work after this surgery due to pain, and because she had physical therapy.

Plaintiff had surgery on her right shoulder on April 19, 2001 to repair a rotator cuff tear. Plaintiff testified that she had physical therapy for three or four months after the surgery on her right shoulder. Plaintiff testified that she was unable to return to work after her second shoulder surgery due to shoulder pain.

On September 10, 2001, plaintiff had surgery to repair a hernia. Plaintiff testified that she was unable to return to work after her hernia surgery due to knee and shoulder pain.

The hardware in plaintiff's knee was surgically removed on December 11, 2001. Plaintiff testified that she did not return to work after this knee surgery due to knee and shoulder pain, and to allow the knee to heal.

At the time of the hearing, plaintiff was able to do some everyday activities, such as laundry, cooking, and shopping. However, these tasks took a much longer time to complete than before her injury because she needed to take breaks. Plaintiff no longer walked her dog or mowed the lawn. Plaintiff testified that she still experienced pain in her shoulders and knee. Plaintiff becomes uncomfortable after sitting for a long time.

William Newman, a medical expert, testified that plaintiff's knee never completely recovered from the October 1999 injury, but that the knee injury did not equal a listed impairment for twelve months.

Dr. Newman testified that plaintiff would not have been able to do even sedentary work for three to four weeks after her first shoulder surgery, and she would have experienced pain for

awhile. According to Dr. Newman, plaintiff would have had to keep her arm in a sling for five weeks after her second shoulder surgery. Plaintiff would not have been able to do even sedentary work during that time, and would not have been able to lift even ten pounds one-third of the day for three months. She would have been able to do some reaching for objects, with no weight, approximately six weeks after her right shoulder surgery. Dr. Newman opined that plaintiff would never be able to lift fifty pounds again. One year after plaintiff's first shoulder surgery, plaintiff would have been able to lift twenty pounds occasionally, and ten pounds frequently, and would have been able to do unlimited reaching.

Dr. Newman testified that using crutches could not cause a torn rotator cuff, because that type of injury results from the opposite type of motion than is required to use crutches. He further testified that trauma or usual wear and tear can cause a torn rotator cuff. Dr. Newman testified that plaintiff had some residual problems with her shoulders after the surgery, and concluded that the impairments relating to plaintiff's shoulders lasted for at least twelve months.

Dr. Newman testified that plaintiff would have been unable to do even sedentary work for approximately one month after her hernia surgery. He further testified that it would have taken plaintiff six to eight weeks to recover from the hernia surgery, and that there would have been no residual impairment unless there were complications.

According to Dr. Newman, plaintiff would have been unable to bear any weight on her knee for two or three days after the hardware was removed in December 2001, and would have been unable to do even sedentary work for ten days. Dr. Newman testified that it would have taken three to four weeks to recover from the removal of the hardware.

Dr. Newman opined that plaintiff had impairments that lasted at least twelve months and

that these impairments had more than a minimal effect on plaintiff's ability to work, but that the impairments did not meet or equal in severity the criteria of the listed impairments. According to Dr. Newman, plaintiff's medical records indicated that her shoulders healed, but that they would never be completely normal. As a consequence, according to Dr. Newman, plaintiff would always be restricted to light work.

Vocational expert Thomas Dunleavy testified that plaintiff's job as a merchandiser was semi-skilled, and required a medium level of exertion. He testified that plaintiff's job at the hardware and lumber store was semi-skilled, and required a heavy level of exertion. He testified that her job as an order picker was unskilled, and required a medium level of exertion. He testified that her job as an inventory clerk was semi-skilled and required a light level of exertion. Finally, the vocational expert testified that missing more than twelve days in a year to recuperate from surgery would seriously erode the occupational base.

### III. Legal Standard

Under Section 405(g), a district court may affirm, modify, or reverse the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g). The court must uphold the Commissioner's findings of fact if they are supported by substantial evidence. Id.; Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000). Substantial evidence is evidence that "a reasonable mind would accept as adequate to support a conclusion." Binion ex rel. Binion v. Chater, 108 F.3d 780, 782 (7th Cir. 1997). The court may not reweigh the evidence, resolve conflicts, decide credibility questions, or substitute its judgment for that of the Commissioner. Clifford, 227 F.3d at 869. However, the review must be more than an uncritical rubber stamp. Id.

The Social Security regulations provide a five-step inquiry to use in determining whether a claimant is disabled:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals one of the impairments listed by the SSA, see 20 C.F.R. § 404, Subpt. P, App. 1;
(4) whether the claimant can perform her past work; and
(5) whether the claimant is capable of performing work in the national economy.

See Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995) (citing 20 C.F.R. § 404.1520). If a claimant satisfies the first three steps, she will automatically be found disabled. Id. If a claimant satisfies the first two steps, but not the third, then she must satisfy step four. Id. Once step four is satisfied, the burden shifts to the Social Security Administration ("SSA") to establish step five. Id.

**IV. Analysis**

At step one, the ALJ found that plaintiff engaged in substantial gainful activity in 1999 and 2000, after the amended alleged disability onset date of October 20, 1999. However, the ALJ stated that he did not base his decision that plaintiff was not disabled on his findings at this step of the analysis. Next, at step two, the ALJ accepted the medical evidence that plaintiff's shoulder problems constituted a severe impairment. The ALJ found that plaintiff's shoulder impairment lasted at least twelve months, but found that her other impairments did not. At step three, the ALJ accepted the medical expert's opinion that plaintiff did not have an impairment or combination of impairments that met or was medically equivalent to any listed impairment. At step four, the ALJ found that plaintiff's shoulder impairment did not prevent her from performing her past relevant work as an inventory clerk for a continuous period of twelve months

7

or more during the relevant period. Accordingly, the ALJ concluded that plaintiff was not disabled, within the meaning of the Social Security Act, for a continuous period of at least twelve months.

Plaintiff first argues that the ALJ improperly rendered a decision because he failed to discuss plaintiff's credibility, or to make any findings with respect to her credibility. Specifically, plaintiff argues that the ALJ should have considered plaintiff's testimony that she still was experiencing pain in her knee and shoulders at the time of the hearing, and her testimony relating to the side effects of taking Vicodin.

An ALJ's decision regarding a claimant's credibility must "contain specific reasons for the finding on credibility, supported by the evidence in the case record." Social Security Ruling 96-7p ("SSR 96-7p"); see also Brindisi ex rel. Brindisi v. Barnhart, 315 F.3d 783, 787 (7th Cir. 2003) (ALJs must comply with SSR 96-7p). These reasons "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

In his decision, the ALJ did not explicitly discuss plaintiff's testimony relating to her current level of pain or her inability to do sedentary work. Plaintiff testified that she had not returned to work at the time of the hearing because she did not believe that she could do the same work that she had been doing. She explained that her shoulders still hurt, and stated that she would be uncomfortable even doing a job in which she sat most of the day.

Defendant argues that the ALJ found plaintiff's testimony to be credible. In support of this argument, defendant cites the ALJ's finding that the medical expert's opinions, which the ALJ credited, were "consistent with the claimant's allegations, which reflect her sincere

perception of a continuous inability to work at all times." However, the ALJ made this finding in the context of a discussion regarding whether plaintiff's multiple impairments could be considered in combination. The ALJ did not discuss the credibility of plaintiff's testimony that she would be uncomfortable sitting for long periods of time. Indeed, the ALJ implicitly rejected this testimony by finding that plaintiff's shoulder impairment did not prevent her from performing her past relevant work as an inventory clerk.

Nor did ALJ address plaintiff's testimony regarding the side effects of her medication. Plaintiff testified that started taking Vicodin before her first shoulder surgery, but did not specify precisely how long before the surgery she had done so. Plaintiff testified that she took Vicodin after every surgery, for "[a]lmost that whole year,"[2] although she acknowledged that there were times during the summer when she did not take Vicodin. Plaintiff testified that the Vicodin caused her to doze off for a half-hour to an hour once or twice a day. As of the date of the hearing on December 19, 2002, plaintiff was no longer taking Vicodin, and the pain medication that she was taking at that time did not cause drowsiness like the Vicodin had. The vocational expert testified that dozing off for an hour at a time once or twice a day would eliminate competitive employment.

Defendant argues that the ALJ's assessment of plaintiff's residual functional capacity was consistent with plaintiff's testimony relating to the side effects resulting from taking Vicodin. According to defendant, plaintiff's testimony that she used Vicodin after every surgery was consistent with medical evidence that she did not take Vicodin throughout the relevant time

---

[2] Presumably the year to which plaintiff referred was 2001, when she had both shoulder surgeries, the hernia repair surgery, and the surgery to remove the hardware in her knee.

9

period. Therefore, argues defendant, any side effects from taking Vicodin would not have persisted for twelve months. The ALJ did not include such an analysis in his decision, however, and so the court does not find this argument persuasive. See Golembiewski v. Barnhart, 322 F.3d 912, 916 (7th Cir. 2003) ("general principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ").

The court agrees with plaintiff that the ALJ did not articulate his reasons for discounting plaintiff's statements about her pain and its functional effects, or the side effects of her medication. Although the ALJ stated in the findings section of his decision that "[t]he claimant's allegations of symptoms have been considered in the assessment of her residual functional capacity," such a conclusory statement is not adequate to fulfill the ALJ's obligation to offer specific reasons for the weight given to a claimant's statements. See Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001) ("it is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered'...."). Since the ALJ's decision provides no opportunity for meaningful judicial review, the case must be remanded.

Because the issue may recur, the court will briefly address plaintiff's argument that the ALJ erred in finding that plaintiff's shoulder impairment was unrelated to her fractured knee. The relevant Social Security regulation provides:

> We cannot combine two or more unrelated severe impairments to meet the 12-month duration test. If you have a severe impairment(s) and then develop another unrelated severe impairment(s) but neither one is expected to last for 12 months, we cannot find you disabled, even though the two impairments in combination last for 12 months.

20 C.F.R. § 404.1522(a). The ALJ found that only plaintiff's shoulder impairment lasted for

10

twelve months, and that plaintiff was able to perform sedentary work within twelve months after the onset of the shoulder impairment. The ALJ found that plaintiff's knee injury and hernia did not cause plaintiff to be disabled for twelve months, and credited the medical expert's testimony that the shoulder impairment could not have been caused by using crutches while recovering from the knee injury. The ALJ characterized plaintiff's various impairments as discrete problems, and declined to consider them in combination.

Plaintiff argues that the ALJ should have considered her impairments in combination, because the medical expert testified that they all may have stemmed from her October 1999 fall. At the hearing, the medical expert testified that plaintiff's impairments "all may be related to falling down with the dog. I don't know, even the hernia." However, the medical expert then re-examined the medical records relating to plaintiff's treatment after her October 1999 fall to see if plaintiff had complained about her shoulders or hernia at that time. After reviewing the records, the medical expert noted that they did not indicate any such complaint. No other evidence that plaintiff's impairments were related was presented at the hearing. Given the lack of evidence in the record that plaintiff's impairments were related, it appears that the ALJ's finding that they were not related was reasonable.

Finally, plaintiff requests an award of attorney's fees in her motion for summary judgment. That request is denied on the basis that plaintiff does not cite any authority to support it.

**ORDERED:** Plaintiff's Motion for Summary Judgment [6-1] is granted. Defendant's Motion for Summary Judgment [9-1] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is reversed, and the case is remanded to the Commissioner for

11

action consistent with this opinion. Judgment in favor of plaintiff will be set forth on a separate document, and entered in the civil docket. See Fed. R. Civ. P. 58.

ENTER:

*George W. Lindberg* (signature)

George W. Lindberg
Senior United States District Judge

DATED: APR 1 9 2004

12